# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| _____ | ) | |
| **Nicole Lang** | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Docket No.  1:13-CV-00349-LM** |
|  | ) | |
| **Wal-mart Stores East, L.P.** | ) | |
| **Defendant** | ) | |
| _____ | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
### OBJECTION TO MOTION FOR SUMMARY JUDGMENT

### FACTS

On August 4, 2009, Defendant Wal-Mart hired the Plaintiff to work at the Wal-Mart Distribution Center, located in Raymond, New Hampshire.  Ms. Lang's original title was that of Order Filler in the Break Pack Department of the Distribution Center.  In this position, her duties were to fill boxes that were ultimately to be shipped to various store

Page **1** of **28**

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

locations. In approximately August of 2010, Ms. Lang's position changed to that of an "Unloader/Processor", wherein her duties entailed unloading trucks using various pallet jacks or other equipment, as necessary, to unload the trailers. For the first year she was employed at Wal-Mart,  Ms. Lang worked in excess of 36-40 hours, and also had regular overtime.  She was able to meet Wal-Mart's incentives and goals for her position. Ms. Lang's husband, Christopher, also worked at the Raymon distribution center.

In October of 2010, the Plaintiff informed her supervisor Brian Hug that she was pregnant with her first child.  At the time of her announcement, the Plaintiff also told Hug that her doctor suggested that she should not lift more than 25 pounds, but there was no formal restriction.

Hug told the Plaintiff that his wife had been pregnant with restrictions, but that without a formal doctor's note, Ms. Lang would have to perform all aspects of her position, including lifting in excess of 25 pounds. Ms. Lang alleges that she was in fear of losing her job, so she continued to try to perform all of her job duties without regard to the lifting restrictions. (**Nicole Lang Depo., p. 37**) Since sharing her pregnancy status, however, Ms. Lang alleges that she noticed that she was being assigned with more frequency trailers known as "reserved by data, i.e. RBD" to the employees **(Nicole Lang Depo., p. 25)**, because they are typically filled with merchandise that is imported, and, as a result, packed inefficiently-not on pallets-, from floor to ceiling.  These trailers require that they be unloaded by hand, without the benefit of pallet jacks or other mechanical equipment to unload.   The weights in the box differed and could vary from a case of entertainment systems, to silverware to curtains, all of which would have

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

to be unloaded by hand, without the use of any mechanical equipment.  In addition to having to physically unload these trailers, Ms. Lang alleges that her productivity numbers were affected by the sheer number of these trucks she was assigned. (**Exhibit A, Coaching Incident Detail dated 11/10/10**). Although the Plaintiff received these trailers prior to her pregnancy, she seemed to be assigned these with more regularity after she informed Wal-Mart of her pregnancy.

Up until November 7, 2010, Ms. Lang was able to perform the duties of "Unloader" with assistance from fellow employees.  (**Lang Depo., Page 38; Lang Affidavit Para. 4**)  On that date, Lang pulled a muscle while unloading one of these imported/RBD  trailers.  Ms. Lang reported the incident to Hug, who escorted her to the First Aid room.  Ms. Lang iced the area, at which time  Hug, the HR representative (Bridget Ronaghan) and other managers came into the room.

Ms. Ronaghan drove the Plaintiff home and told her to take the following day off from work. Bridget Ronaghan, from Human Resources told Lang that her pregnancy was a liability and that she should apply for leave under the Family Medical Leave Act (FMLA).  (**Lang Affidavit, Para. 6**)  At no time did Wal-Mart employees advise her that she could request an accommodation for her physical restrictions.

Ms. Lang explained that she had specifically asked her doctor NOT to write a note regarding limitations with respect to lifting and exertion because she was concerned that she would be forced to leave her job when she needed it most to plan for the baby's arrival. (**Lang Depo. p. 37**)

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

On or about November 8, 2010, the Plaintiff's husband went to the Human Resource Manager (Andrea Rose) to ask if there was another position that the Plaintiff could do while pregnant, as he was concerned about his wife unloading the RBD imported trailers by hand. Initially, Ms. Rose refused to discuss the situation. However, Mr. Lang insisted, even asking that the Plaintiff authorize Ms. Rose by phone to discuss the situation with him. (**Lang Depo. pp. 46-47**)

On November 10, her next obstetrician visit, the Plaintiff learned that she had strained a muscle, and Dr. Montarella prescribed Excedrin. Ms. Lang felt better immediately and was prepared to return to work. Lang informed Dr. Montarella that Wal-Mart did not want her to work while pregnant. Dr. Montarella suggested that Lang contact the state's labor board, and ask for information about seeking an accommodation so that she could return to work. (**Lang Depo. p. 45**).

Prior to this time, Ms. Rose insisted to Ms. Lang and her husband that unpaid FMLA leave was the only option, stating that "if I accommodate you, I have to accommodate everyone". (**Lang Affidavit Para. 5**). Until Lang requested it, Wal-Mart never provided the Plaintiff with any information about requesting reasonable accommodation for her pregnancy complication. Wal-Mart was well aware of Ms. Lang's pregnancy, and her injury resulting from lifting, and the requirement to offer a reasonable accommodation. Ms. Lang was not aware that she could request reasonable accommodation until she telephoned the New Hampshire Human Rights Commission. (**Lang Depo. p. 45**)

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH 03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

In mid-November, Andrea Rose did provide Lang with the Request for Accommodation form.  On November 23, 2010, Ms. Lang made a request to Wal-Mart for reasonable accommodation. Ms. Lang completed all of the paperwork requesting a reasonable accommodation, including a note from her obstetrician outlining her lifting and standing restrictions. (**Exhibit B, Request for Accommodation 11/23/10**)

The Plaintiff remained ready, willing, and able to work her job while waiting for the reasonable accommodation paperwork to be reviewed; however, she was not given the opportunity to continue working once she injured herself on November 7th.

On or about December 10, 2010, Ms. Lang's request for reasonable accommodation was denied. (**Exhibit C, Wal-Mart Denial letter 12/10/10**).

Wal-Mart  required Ms. Lang to go on unpaid FMLA leave until her maternity leave was over, earning no pay. (**Exhibit D, Request for Leave of Absence-FMLA, 11/23/10), 12/30/10)**  The loss of the Plaintiff's income reduced her household income by 40%, which caused the Plaintiff and her husband to suffer financially as a result of Wal-Mart's refusal to accommodate her pregnancy status.

The Plaintiff gave birth to her son on June 15, 2011 and was on maternity leave until July 30, 2011. Upon returning to work at Wal-Mart Lang was assigned the job of FID Processor. She understood that her original job had been given to someone else because she had been out of work for a total of more than 6 months. (**Lang Depo. p. 54; Lang Affidavit Para. 15**)

Page **5** of **28**

The Job of FID Processor involved using a forklift to bring a pallet of freight to your designated area to scan and label the boxes,  and then place them on the conveyor belt.  This was a less physically demanding job than Ms. Lang's previous job of Unloader. (**Lang Depo. p. 28**)

Ms. Lang felt "targeted" upon her return from maternity leave.  Her supervisor made her feel uncomfortable asking for extra time to use her breast pump, and he delayed in providing responses to her requests.   (**Lang Depo., pp. 62, 121-123; Lang Affidavit Para. 15**)

On November 19, 2011, Ms. Lang injured her right arm while working in the position of   FID Processor. Her supervisor responded with "are you joking?" when she reported the injury to him. (**Lang Depo., p. 62**).

Following the injury, Lang received emergency treatment, and Wal-Mart placed her on light duty, or Temporary Alternative Duty (TAD) beginning on November 20, 2011.  Light duty consisted of sweeping, during, cleaning, painting, and label backings. (**Lang Depo p. 67, Lang Affidavit Para. 16**)

During this time, Ms. Lang felt that supervisors were watching her closely and being unduly critical of her work, even when she was assigned the task of dusting. Ms. Lang was also told not to speak to other Wal-Mart associates.  (**Lang Depo. p. 121-123; Lang Affidavit Para. 15**)

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

She worked another two weeks doing light duty, but she had continued pain, swelling, and discoloration of her right arm. Andrea Rose again advised the Plaintiff that she would complete LOA forms. Then, Andrea Rose called Ms. Lang, and she advised her to report to work the next day, and that they would modify her job to accommodate her right arm issues.  (**Lang Depo. p. 67; Lang Affidavit Para. 18**)

In the year prior to this, Ms. Lang and her husband had planned to move for Florida, where they would both transfer to a Wal-Mart distribution center located there. However, Bridget Ronaghan advised the Plaintiff that she could not transfer while she was on light duty status.  (**Lang Affidavit Para. 23)**. Between December 2011 and February 2012, Ms. Lang received treatment for the arm injury, and worked on modified duty. The treatment consisted of physical therapy, cortisone shots, and prescription pain medications. On or about February 13, 2012, the Plaintiff's husband, who also worked for Wal-Mart in the same location, requested and received a transfer to a Wal-Mart Distribution Center in Florida. His last day of work at the Raymond facility was February 20, 2012.

On February 17, 2012, Ms. Lang's 90-day temporary duty period expired, and Andrea Rose informed her that she had extended Ms. Lang's temporary duty, which would prevent Ms. Lang from requesting a transfer to a Florida distribution center. Because Lang was concerned about losing her job, she asked for a leave of absence,  but Rose refused. However, Ms. Lang's treating doctor, Dr. Bernard, recommended two (2) weeks of rest, and Ms. Lang was able to  move to Florida without jeopardizing her job status in New Hampshire.  (**Lang Depo. pp. 71-72)**

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

On February 21, 2012, Wal-Mart filed a Memo of Denial of Ms. Lang's worker's compensation claim. A copy of that denial is attached as **Exhibit E, Memo of Denial of Worker's Compensation Claim, 2/21/12**. Although Wal-Mart paid for her medical bills while she lived in New Hampshire, Wal-Mart never paid her weekly benefits during her LOA, and refused to pay further medical bills as of February 21, 2012.

On February 22, 2012, Ms. Lang and her family left to move to Florida. The Plaintiff continued to communicate with Andrea Rose, who extended the LOA to April 2, 2012.Ms. Lang continued to communicate with Andrea Rose, and made every effort to maintain her job. Ms. Rose then agreed to extend her LOA to August 13, 2012. However, because this was a work-related injury, Ms. Lang had difficulty finding a doctor in Florida who would treat her. She sought help from Andrea Rose, as well as Denise Kondor, the Worker's Compensation Adjuster, but neither one would help her locate a doctor. (**Lang Depo. p. 77, 88; Lang Affidavit Para. 24**)

By letter dated August 16, 2012, Andrea Rose  advised Ms. Lang that she would be deemed to have voluntarily quit her position, if Ms. Lang did not return the completed LOA package within 3 days. (**Exhibit F, Wal-Mart letter dated August 16, 2012**) The Plaintiff made it clear to her employer that she was not voluntarily quitting her position, and that if Wal-Mart did not want her to be employed by them, then they were terminating her. On August 27, 2012, in a telephone call from Andrea Rose,   she informed Ms Lang that Lang would be considered a "voluntary quit". (**Lang Depo. p. 86**) Lang takes the position that Wal-Mart terminated her employment.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

**PROCEDURAL HISTORY**

On or about December 30, 2010, Nicole Lang filed a Charge of Discrimination with the New Hampshire Human Rights Commission (CHR).   The CHR thereafter conducted an investigation, and on May 3, 2013, issued a Notice of Right to Sue. On August 3, 2013, the Plaintiff filed suit in this Court. Wal-Mart has filed an Answer, and the parties have conducted discovery. Wal-Mart seeks Summary Judgment on all Counts of Plaintiff's Complaint.

**STANDARD OF REVIEW**

A moving party is entitled to Summary judgment only if "…the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case." *Fadili v. Deutsche Bank National Trust Co*., Civil 12-cv-68-JD (D. NH March 6, 2014), quoting *Jakobiec v. Merrill Lynch Life Ins. Co*., 711 F.3d 217, 223 (1st Cir. 2013). In ruling on a Motion for Summary Judgment, all reasonable factual inferences are resolved in favor of the non-moving party. *Kenney v. Floyd*, 700 F.3d 604, 608 (1st Cir. 2012). "…[T]he party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim." *Isaacs v. Dartmouth-Hitchcock Medical Center*, Civil 12-cv-040-LM (D. NH) April 18, 2014 (quoting *Sánchez-Rodríguez v. AT&T Mobility P.R., Inc*. , 673 F.3d 1, 9 (1st Cir. 2012).

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

**I.**      **THERE ARE GENUINE ISSUES OF MATERIAL FACT, AND THEREFORE WAL-MART IS NOT ENTITLED TO SUMMARY JUDGMENT**

"A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case." *Fadili v. Deutsche Bank National Trust Co.*, *supra*) Here, the parties disagree on key facts.

First, Lang asserts that once she discovered that she was pregnant, she continued to perform her regular duties as Unloader with the assistance of fellow employees.  **Lang Depo., Page 38; Lang Affidavit Para. 4**) In contrast, Wal-Mart takes the position that Ms. Lang perform "her regular duties as an Unloader". (**Wal-Mart Statement of Material Facts, #24**), which implies that she was able to lift, stand, and perform all other required duties of an Unloader without any assistance.

The parties' view of the circumstances surrounding Ms. Lang's choice to apply for unpaid leave under the Family Medical Leave Act (FMLA). In her Affidavit, Andrea Rose, Human Resources Manager for Wal-Mart's Raymond, New Hampshire Distribution Center, states merely that "On or around November 23, 2010, Ms. Lang submitted completed Family and Medical Leave Act (FMLA) paperwork." (**Andrea Rose Affidavit, Para. 7**). However, Ms. Lang disputes that she made the voluntary choice to file for unpaid FMLA leave; she makes it clear in her Affidavit that Wal-Mart gave her no option, with Rose denying any accommodation options, and stating to her "If I accommodate you, I have to accommodate everyone".   (**Lang Affidavit Para. 5**).

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

Perhaps most significantly, the parties disagree as to whether or not other employees with lifting and/or standing restrictions were provided accommodations. Rose states in her Affidavit that "In 2010, nineteen male Associates whose doctors imposed lifting restrictions for medical reasons were likewise placed on leaves of absence from the Distribution Center". (**Andrea Rose Affidavit, Para. 9**). However, Ms. Lang's Affidavit reveals that, during the time she worked at the Raymond Distribution Center,  there were at least 3 pregnant women with lifting restrictions whom Wal-Mart accommodated by either modifying their positions, or providing alternate duties. **(Lang Affidavit  Para. 9-11)**.


II.     **FAILURE TO ACCOMMODATE**


     A.   **AT ALL RELEVANT TIMES, NICOLE LANG WAS  DISABLED, WITHIN THE MEANING OF THE ADA**

As a threshold matter, Wal-Mart argues that Ms. Lang has failed to prove that she is disabled, within the meaning of the Americans With Disabilities Act (ADA), as amended by the ADAAA, eff. 1/1/09.


In order to establish a colorable claim of failure to provide a Reasonable Accommodation under the ADA, a party must provide enough evidence for a reasonable jury to be able to find that:


    (1)[s]he is disabled within the meaning of the ADA;
    (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation; and


Page **11** of **28**

(3) the employer, despite being aware of the employee's disability, did not reasonably accommodate it.

*Rocafort v. IBM Corp.,* 334 F.3d 115, 119 (1st Cir.2003).

Once the employee has satisfied the three (3) elements, the employer then has the burden to provide a legitimate, non-discriminatory reason for the adverse action. The employee then must prove that the employer's reason for adverse action is a mere pretext for a discriminatory motive. *Tobin v. Liberty Mutual Ins. Co*., 433 F. 3d 100, 104 (1st Cir. 2005) (cases cited therein).

The threshold burden of proof for a prima facie ADA discrimination case is "...not especially burdensome" *Martinez-Burgos v. Guyama Corp*., 656 F. 3d, 7, 12 (1st Cir. 2011)

The ADA's definition of disability requires: either (1) a physical or mental impairment that substantially limits one or more major life activities (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. {12102(1)(A)-(C). Amendments to the ADA, (the ADA Amendments Act of 2008, hereafter the "ADAAA"), effective January 1, 2009, changed the "rules of construction", requiring that the ADA "...definition of disability...be construed in favor of the broad coverage of individuals under the [ADA], to the maximum extent permitted by the [ADAAA]." *Id* at (4)(A). The ADAAA also further defined the construction of the phrase

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

"substantially limits" "…to be interpreted consistently with the findings and purposes of the ADA."  42 U.SC. {{12102(4)(A),(B)[1]

While pregnancy, in and of itself, is not a disability, the regulations implementing the ADAAA provide that "…a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition [of  impairment under the ADA]"   29 CFR {1630.2 (h)

Ms. Lang was able to perform her job with assistance, while pregnant, until November 7, 2010[2], when she pulled a muscle in her groin (Nicole Lang Depo., p. 39). Previously, Dr. Mary Jo Montarella, her obstetrician, had informally restricted her to lifting 25 pounds; after the muscle pull, Dr. Montarella restricted Ms. Lang's ability to lift to 20 pounds, and to stand no longer than 8 hours per day.  In her position as Unloader, Ms. Lang worked 12 hour shifts. (**Nicole Lang Depo., p. 37, 19; Exhibit B, Request for Accommodation Form 11/16/1**0) Dr. Montarella later revised the lifting limit to 25 pounds, and imposed a work limit of  8 hours per day, 40 hours per week, with frequent rest periods (**Exhibit D, FMLA medical form dated 12/30/10**)

Wal-Mart's job description for Unloader requires an employee to have the ability to move, lift, carry and place merchandise and supplies of up to a maximum of 60

---

[1] Moreover, the "…primary purposes of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA" 29 C.F.R. {1630.1(c)(4).
[2] Prior to November 7, 2010, Ms. Lang did have some fellow employees assist her with lifting (Nicole Lang Depo. p. 38

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

pounds without assistance. (**See Unloader Job Description attached as Exhibit G)** The job description of the Unloader position was provided as part of  Ms. Lang's personnel file, but it is unsigned.

Analyzing the facts in the light most favorable to the non-movant,  *Kenney v. Floyd, supra*,  Ms. Lang's inability to lift over 20 pounds, stand more than 8 hours/day, and her need to take frequent rest periods,  constitute an impairment that substantially limits one or more major life activities, within the meaning of the ADA.   Major life activities include, but are not limited to "…performing manual tasks…[such as] standing…lifting". 29 CFR {1630.2 (i)(1)(i)  Furthermore, "…the term "major" shall not be interpreted strictly to create a demanding standard for disability….Whether an activity is a "major life activity" is not determined by reference to whether it is of "central importance to daily life." 29 CFR {1630.2 (i)(2)[3]

In short, Ms. Lang's lifting, standing, and resting restrictions, due to her injury while pregnant, were an impairment that substantially limited one or more major life activities, within the meaning of the ADA.

---

[3] The ADAAA also shifted the focus of inquiry *away* from whether a person has an impairment that substantially limits one or more major life activities, and *towards*  whether or not a covered entity has complied with its legal obligations, and whether discrimination has occurred. CFR 1630.2 (j)(iii)

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

**B.   MS. LANG WAS ABLE, WITH A REASONABLE ACCOMMODATION, TO PERFORM THE ESSENTIAL FUNCTIONS OF THE JOB OF UNLOADER**

Ms. Lang testified in her deposition that, initially when she discovered she was pregnant, she was able to perform the job of Unloader with the assistance of other employees. (**Nicole Lang Depo. p. 39**) On November 7, 2010, she pulled a muscle, and on November 22nd, her obstetrician issued lifting and standing restrictions as a result of her injury (**Exhibit B**).   Therefore, Wal-Mart became aware of her impairment on November 7.  On that date, while being treated for the muscle pull, Ms. Lang first requested a reasonable accommodation[4], asking if she could be placed in an alternate position cleaning, or in another suitable position. (**Lang Depo. pp. 39-40; Lang Affidavit Para. 5**).

Moreover, Ms. Lang had witnessed situations where other Wal-Mart made accommodations for other female Wal-Mart employees who had lifting restrictions. (Nicole Lang Affidavit, Para. 8-10). Wal-Mart only admits that in 2010, 19 male employees with lifting restrictions were placed on leaves of absence. (Andrea Rose Affidavit, Para. 9).

On November 8, while she was present, Christopher Lang, Ms. Lang's husband, asked Andrea Rose if there was an alternate position for her in the warehouse-sweeping, dusting, labeling, or cleaning. He also suggested that Nicole be allowed to use the forklift for the trailers. (**Nicole Lang Depo., pp. 46-47**). According to Ms. Lang, Ms.

---

[4] She was not aware that she was able to ask for an accommodation, but did  request an alternate position. (Ibid)

Page **15** of **28**

Rose responded by declining, saying "if I had to accommodate you, I'd have to accommodate everyone". ( *Id* at 47; **Lang Affidavit Para. 5**)


       Later in the week, Ms. Lang visited her obstetrician, and informed her that Wal-Mart would not allow her to work while she was pregnant. Dr. Montarella  suggested that she contact the state labor board, and a lawyer. Ms. Lang then called the New Hampshire Commission for Human Rights,  who informed her that she had the right to request a reasonable accommodation. (**Nicole Lang Depo., pp. 44-45, 47-48**) Ms. Lang called Wal-Mart and spoke with Jay Aviles, an HR employee, and when she requested a reasonable accommodation form, he questioned who had told her about the form. Aviles then promised Ms. Lang that he would leave the accommodation paperwork for her husband. ( **Nicole Lang Depo. pp. 45-46**). On November 16, Wal-Mart provided the Request for Accommodation form to Ms. Lang. (**Exhibit B**)  Ms. Lang submitted the completed Accommodation Request Form to Wal-Mart on November 23rd, seeking the modification of her job, limiting her to "trailors [sic] that don't need to be unloaded by hand…or a type of job that doesn't deal with lifting over 20 pounds", citing the examples of cleaning or labels. (*Ibid*).  While the Accommodation request was pending Ms. Lang submitted a request for FMLA leave, which was approved by Andrea Rose on December 3. (**Exhibit D,  FMLA Request 11/23/10**)


       **C.**  **WAL-MART WAS AWARE OF NICOLE LANG'S DISABILITY,  HAD THE DUTY TO PROVIDE HER WITH A REASONABLE ACCOMMODATION, AND FAILED TO DO SO**

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

Because Ms. Lang has met her burden of proof with regard to her disability, as well as her ability to perform the essential functions of her job with a reasonable accommodation, Wal-Mart was obligated to, but failed to, offer her a reasonable accommodation.  "A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability" prong" 29 C.F.R. {(o)(4)   *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 157 (1st Cir. 2009) (analyzing Mass. Gen. L. C. 151B.)

On December 10, 2010, Wal-Mart determined that her condition was "temporary", and not eligible for accommodation, and that her restrictions would not allow her to perform the essential functions of her job.; effectively, this was a denial of Lang's request for a Reasonable Accommodation. (**Exhibit C**)[5]

On December 28, 2010, having had her request for accommodation denied, Ms. Lang applied for a leave of absence under FMLA,  with Dr. Montarella limiting her to lifting 25 pounds, and 8 hours/day, 40 hours/week.  (**Exhibit D**).

---

[5] At the time Ms. Lang requested an Accommodation, Wal-Mart had a written policy entitled "Accommodation in Employment-(Medical-Related Policy)-New Hampshire" (hereafter "Wal-Mart's Accommodation Policy) (**Exhibit H, Accommodation Policy updated August 21, 2010**).  Wal-Mart's Accommodation Policy acknowledges that employees may need assistance performing an essential function of a job; yet, the only choice provided to Ms. Lang was an unpaid absence under FMLA. Not only did Wal-Mart fail to comply with the ADA, it  also failed to follow its own policy in rejecting Ms. Lang's informal and formal requests for accommodation,

Page **17** of **28**

The accommodations Ms. Lang requested would not only enable her to perform the essential functions of her job, but would have been feasible for Wal-Mart under the circumstances. *Jones v. Nationwide Life insurance* Co., 696 F. 3d 78, 90 (1st Cir. 2012) [citations omitted].  Ms Lang's Affidavit provides the names of other female Wal-Mart employees in similar situations ( i.e. pregnant with lifting restrictions) who were provided accommodations to allow them to perform their positions while they were pregnant. (**Lang Affidavit, Para. 9-11**)

Reasonableness of the requested accommodation is related to the feasibility requirement."One element in the reasonableness equation is the likelihood of success". *Jones, supra* at 90, quoting *Evans v. Fed. Express Corp.*, 133 F. 3d 137, 140 (1st Cir. 1998). Based on Ms. Lang's later experience while employed by Wal-Mart, the accommodations  she proposed were not only feasible, but she, in fact, was provided an accommodation when she injured her arm at work in November of 2011; since her return from maternity leave, Ms. Lang was in the position of FID Processor, which was not as physically demanding as that of Unloader (**Lang Depo., pp. 27-28)** After the November 2011 injury, Andrea Rose assigned Ms. Lang to a job dusting, cleaning, painting, and doing label backings. (**Lang Depo. pp. 65,-67**). These were the *same tasks* that Ms. Lang (and her husband) had informally requested as a reasonable accommodation in November and December of 2010, and which were not even considered by Wal-Mart.  Ms. Lang alleges that these temporary alternative duty (TAD) jobs were only offered to employees hurt "on the job". (**Nicole Lang Affidavit, Para. 21**) Instead, Wal-Mart arbitrarily chose to offer Ms. Lang FMLA unpaid leave.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

The Interpretive Guidelines to the ADA provide the guidelines for an employer in determining a reasonable accommodation:

> When an individual with a disability has requested a reasonable accommodation to assist in the performance of a job, the employer, using a problem solving approach, should:
>
> (1) Analyze the particular job involved and determine its purpose and essential functions;
>
> (2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;
>
> (3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and
>
> (4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.
>
> *Appendix to Part 1630, Interpretive Guidelines to the ADA, 29 CFR 1630.9*, eff. 1/1/09

Wal-Mart has failed to produce evidence that they engaged in *any* meaningful review to determine whether or not Ms. Lang's suggested reasonable accommodations were feasible, nor did they produce evidence that they engaged in an interactive process to determine reasonable accommodations for Ms. Lang's position.

Page **19** of **28**

**D. WAL-MART HAS FAILED TO PROVIDE A LEGITIMATE NON-DISCRIMINATORY REASON FOR FAILING TO PROVIDE A REASONABLE ACCOMMODATION**

Assuming Ms. Lang has proven a prima facie case of discrimination under the ADA for failure to accommodate, and/or for termination, the burden then shifts to the employer to provide a legitimate, non-discriminatory reason for its actions and/or omissions. *Tobin v. Liberty Mutual Ins. Co*., 433 F. 3d 100, 104 (1st Cir. 2005) (cases cited therein).

Wal-Mart defends its decision to refuse Ms. Lang's accommodation request by stating that  Ms. Lang's condition was "temporary", and that she could not perform the essential functions of the job of Unloader (**Exhibit C**) Wal-Mart proffers no specific evidence as to the process it used, if indeed any, to review the possibility of accommodation, and enter into a discussion with Ms. Lang to determine a reasonable accommodation. They claim no "undue hardship" that prevented them from providing Ms. Lang with a reasonable accommodation. The most damning evidence on this issue is that, when Ms. Lang was hurt on the job on November 19, 2011,  Wal-Mart accommodated her by assigning her the very tasks which she requested as an accommodation in November of 2010! (**Lang Affidavit Para. 17**)

**III.     WAL-MART RETALIATED AGAINST NICOLE LANG AFTER HER RETURN FROM MATERNITY LEAVE, AND ULTIMATELY TERMINATED HER, DUE TO HER FILING A CHARGE OF DISCRIMINATION AT THE NEW HAMPSHIRE CHR.**

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

Ms. Lang also brings a wrongful discharge claims against Wal-Mart, alleging violations of both state and federal law.  On or about December 31, 2010, Ms. Lang filed a Charge of Discrimination against Wal-Mart. She gave birth to her child on June 15, 2011, and remained on unpaid leave until the first week of August, 2011, when she returned to work.  Her previous position as Unloader was no longer available, and she took the position of FID Processor, which was not as physically demanding as the Unloader position. (**Lang Depo., pp. 54-55**). During the time she worked as an FID Processor, Ms. Lang felt she was being "targeted." (**Lang Depo., pp. 62, 71; Lang Affidavit Para. 15)**

After the right arm injury, the retaliation went from bad to worse. Ms. Lang underwent some emergency treatment, and then Andrea Rose made the decision to put her on light duty, i.e. temporary alternative duty (TAD)  for 90 days; light duty involved dusting, sweeping, cleaning, painting, and doing label backings. (Nicole Lang Depo., p. 65-67) During this time, Ms. Lang and her husband had both requested transfers to another Wal-Mart Distribution center in Florida. (**Lang Depo. at p. 69**).

Despite the fact that she complained to Andrea Rose about how much pain she was in, Andrea Rose did not put Ms. Lang on Worker's Compensation leave, but chose to extend her TAD beyond the initial 90 days. Bridget Ronaghan had previously advised Ms. Lang that she could not request a transfer because she was currently on TAD, so this had the effect of preventing Ms. Lang from transferring to Florida. (**Lang Affidavit Para. 23**) She felt "trapped", because Rose insisted that Lang return to work the following Saturday, on temporary duty (***Lang Depo.* at p. 68)**; however, with that work status, Ms.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

Lang would not be able to request a transfer to the Florida Distribution Center, and she would "lose her job". Because she was able to obtain a doctor's note prescribing 2 weeks of rest, Ms. Lang was able to move to Florida without losing her job with Wal-Mart. (**Id at p. 73**).

Once she moved to Florida, Lang began to search for a doctor to treat her inured arm. She was unable to find a Florida doctor who would take a worker's compensation claim. Doctors were advising her that they were required to speak with the worker's compensation claims adjuster, Denise Kondor. Nicole believes that once they spoke with Ms. Kondor, she somehow discouraged the doctors from taking her on as a patient. (*Id at p. 78*) Then, on February 21, 2012, Wal-Mart denied her worker's compensation claim as "not causally related to employment".[6] (**Exhibit H**).  One week later, Ms. Lang's husband began a new position at Wal-Mart's Arcadia Distribution Center.

Ms. Lang recalls that when she expressed her frustration at not being able to locate a doctor, Rose laughed at her during a telephone conversation, advising Lang that she put herself in a bad position. (**Lang Depo., p. 78; Lang Affidavit, Para. 24**).

Although Wal-Mart did extend her unpaid leave until August of 2012, Ms. Lang was unable to locate a Florida doctor who was willing to take on her worker's compensation claim. By letter dated  August 16,  2012, Wal-Mart terminated Ms. Lang as  a "voluntary quit". (**Exhibit F Wal-Mart Letter 8/16/12**).

---

[6] Although Wal-Mart acknowledges that Lang suffered a work-related injury, and paid her related medical bills under a Worker's Compensation claim, Wal-Mart never paid Lang weekly Worker's Compensation indemnity benefits, and kept her on unpaid leave.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

## A. A REASONABLE JURY COULD CONCLUDE THAT WAL-MART'S DECISION TO TERMINATE LANG WAS BASED, AT LEAST IN PART, ON HER DISABILITY AND/OR IN RETALIATION FOR HER FILING OF HER CHR DISCRIMINATION CHARGE

In only a small minority of can the Plaintiff provide evidence of the employer's discriminatory intent which is equivalent to a "smoking gun". "These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.' " *Torres-Alman v. Verizon Wireless Puerto Rico, Inc*., 522 F.Supp.2d 367, 380 (D. PER 2007), quoting *Pearson v. First N H Mortgage Corp*., 200 F.3d 30, 35, n. 2 (1st Cir.1999).

Wal-Mart defends its termination of Ms. Lang by arguing that its decision was based solely on the fact that she did not provide medical evidence to support her leave of absence. (**Motion for Summary Judgment, p. 12**).  However, Ms. Lang has specified several ways in which she was retaliated against after returning from maternity leave, leading up to her termination in August of 2012.  Wal-Mart delayed in responding to Ms. Lang's requests for extra time to use her breast pump during breaks. **(Lang Affidavit Para. 15; Lang Depo., pp. 62, 126-128)**. Andrea Rose informed Ms. Lang that she was "lucky to have job security" (**Lang Depo. p. 93**) Supervisors "watched" her, and told her not to speak to other employees, and to repeat tasks which she had just completed. (**Lang Depo. pp. 123-124; Lang Affidavit Para. 15, 17**). When she reported her right arm injury to her supervisor, he responded with "Are you joking?" (**Lang Depo. p. 62**). Her requests to Andrea Rose for assistance when she was in pain were ignored, even though Rose knew that Lang was in pain (**Lang Depo., p 72**).

Page **23** of **28**

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

Although Wal-Mart acknowledges in its pleadings that Ms. Lang suffered a work-related injury on November 19, 2011 (**SMF 38, Andrea Rose Affidavit Para. 12**), Wal-Mart never paid weekly benefits to Ms. Lang while she was out due to the work injury. Ms. Rose also provided no assistance to Ms. Lang in locating a Florida doctor to treat her work-related injury, effectively guaranteeing that Ms. Lang would not be able to receive treatment. (**Nicole Lang Depo., P. 78**).  In response to Lang's request for help, Andrea Rose  laughed at her, and told her that she had put herself in a bad position. (**Nicole Lang Depo., p. 78, Nicole Lang Affidavit Para. 24**).

Indeed, there is no "smoking gun", but there is enough circumstantial evidence for a reasonable jury to conclude that Wal-Mart retaliated against Ms. Lang for having filed a Discrimination Charge at the New Hampshire Commission for Human Rights.

   B.   **MS. LANG HAS PROVIDED SUFFICIENT EVIDENCE OF A TRIABLE ISSUE AS TO WAL-MART'S REASONS FOR TERMINATING MS. LANG WERE A PRETEXT FOR THE UNDERLYING DISCRIMINATORY INTENT**

Once the employee establishes a prima facie case, the employer must provide a legitimate, non-discriminatory (or non-retaliatory) reason for the adverse employment action taken   Salgado-*Candelario v. Ericsson Caribbean, Inc*. 614 F.Supp.2d 151, 167 (D.P.R. 2008),  *Laurin v.Providence Hosp.,* 150 F.3d 52, 58 (1st Cir.1998); *Champagne v. Servistar Corp.,* 138 F.3d 7, 12 (1st Cir.1998). Wal-Mart argues that Ms. Lang's employment was terminated because she failed to return her medical documentation for her LOA.  "One well-established method of demonstrating pretext is to show that

Page **24** of **28**

discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." *Kelly v. Corr. Med.Servs, Inc.,* 707 F. 3d 108, 117 (1st Cir. 2010)  Here, Ms. Lang alleges that Andrea Rose informed her that Wal-Mart refused to accommodate her lifting and standing restrictions, because  "If I accommodate you,  I have to accommodate everyone". (**Lang Depo, p. 58, Lang Affidavit Para. 5 )**.

Andrea Rose continued to be the decisionmaker throughout Ms. Lang's employment, up to and including her termination.   Lang  has  provided  numerous examples of discriminatory comments and treatment by her superiors. For example, in November of 2011, when Ms. Lang informed her supervisor that she had suffered a work-related injury, he replied with "Are you joking?" (**Lang Depo. p. 62**)  When she returned from maternity leave, Lang was observed closely, and told not to speak to other associates. (**Lang Depo. p. 121-123; Lang Affidavit Para. 15)** There were delays in responding when she sought additional time to use her breast pump. **Lang Depo., pp. 62, 121-123; Lang Affidavit Para. 15).**

When she injured her arm, Wal-Mart provided Ms. Lang with an accommodation by placing her on temporary alternative duty, but refused to accommodate her for her pregnancy-related lifting,   standing,  and  resting  restrictions. Andrea Rose on one occasion told Ms. Lang that she was lucky she had job security; (**Lang Depo. p. 93**) on another occasion, Rose laughed when Lang sought help in finding a doctor, informing Lang that she had put herself in that  position.  **Lang Depo., p. 78; Lang Affidavit, Para. 24)**

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

There is no evidence of a "smoking gun" that Ms. Lang can present, but rather a pattern of conduct by the employer which creates a triable issue of retaliation.  In determining whether or not the employer's decision to take adverse action against an employee was due, in part, to impermissible, i.e. discriminatory,  motives, the issue is whether no reasonable jury could conclude that such motives played a role in the adverse action.   *Travers v. Flight Services & Systems, Inc.,* 737 F. 3d 144, 148 (1st Cir. 2013).   Ms. Lang has provided ample evidence of Wal-Mart's pre-existing retaliatory motives, which "tipped the scales" in its decision to ultimately terminate her, and links Wal-Mart's hostility towards her with her disability. *Kelly V. Correctional Medical Services, Inc.,* 707 F 32d 108, 117 (1s Cir. 2013).

IV.  **WAL-MART 'S  TERMINATION OF MS. LANG WAS A WRONGFUL DISCHARGE, IN RETALIATION FOR HER FILING A DISCRIMINATION CHARGE**

n order to prevail on a claim for wrongful discharge, a Plaintiff must prove two elements: "...one, that the employer terminated the employment out of bad faith, malice, or retaliation; and two, that the employer terminated the employment because the employee performed acts which public policy would encourage or because he refused to perform acts which public policy would condemn" *Cooper v. Thomson Newspapers, Inc.*, 6 F. Supp. 2d 109, 112 (D.N.H. 1998)  at 115, quoting *Wenners v. Great State Beverages*, 140 N.H. 100, 103, 663 A. 2d 623, 625 (1995).

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

Ms. Lang relies on her arguments on the issue of retaliation, *supra at  21-26* and states further that  she has met her threshold burden of a triable issue for wrongful discharge. On the issue of public policy, Ms. Lang presents two grounds:

First, in November of 2010, Ms. Lang asserted her right to request accommodation-not because Wal-Mart offered an accommodation, but because she had contacted the New Hampshire Commission of Human Rights (CHR) to inquire about her rights. Shortly thereafter, when Lang requested accommodation paperwork, Wal-Mart's Jay Aviles, Human Resources Manager, questioned where she had learned about requesting an accommodation, and Ms. Lang responded that she had called the CHR, and they had provided her with the information. (**Lang Depo. p. 45**).

Second, in December of 2010, Ms. Lang filed her Charge of Discrimination with the New Hampshire Commission for Human Rights. (CHR). Andrea Rose, who reviewed and approved Ms. Lang's leave requests, and who terminated her, was aware of her discrimination claim.  In fact, Lang and Rose specifically discussed the existence of the pending claim on more than one occasion. (**Lang Depo. pp. 92-93**)

## CONCLUSION

The Plaintiff has demonstrated genuine issues of material fact, and therefore Wal-Mart is not entitled to Summary Judgment on any of the Counts in Plaintiff's Complaint.

*Salem Legal Services, LLC*
*45 Stiles Road, Suite 212, Salem, NH  03079*
*(603) 898-4383 / (603) 898-5210 FAX*
*www.salemlegalservices.com*

Even if the Court concludes that there are no genuine issues of material fact, the Plaintiff has provided sufficient facts to meet the threshold burden of proof for a *prima facie* ADA discrimination case, on all three Counts of (1) failure to reasonably accommodate; (2) retaliation (3) wrongful discharge. In contrast, Wal-Mart has not provided sufficient evidence in rebuttal to keep these issues from a jury.

Respectfully submitted,
Nicole Lang
By her attorney,

Dated: January 23, 2015

*/s/ Darlene M. Daniele*
Darlene M. Daniele
NH BAR 2820
Salem Legal Services, LLC.
45 Stiles Road, Unit 212
Salem, NH  03079
(603) 898-4383 / (603) 898-5210 FAX

Page **28** of **28**