**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Nicole Lang

   v.                            Civil No. 13-cv-349-LM
                                     Opinion No. 2015 DNH 038

Wal-Mart Stores East, L.P.

**O R D E R**

      Nicole Lang was formerly employed at a distribution center owned by Wal-Mart Stores East, L.P. ("Walmart") located in Raymond, New Hampshire. After Walmart terminated Ms. Lang's employment, Ms. Lang brought this lawsuit, asserting claims for unlawful discrimination under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. ("Title I"),[1] and the New Hampshire Law Against Discrimination, N.H. Rev. Stat. Ann. § 354-A:7 ("NHLAD"), as well as a claim for wrongful discharge under New Hampshire common law. Walmart has moved for summary judgment on all three counts pursuant to Federal Rule of Civil Procedure 56, and the court heard oral argument on February 19, 2015. For the reasons that follow, the court grants Walmart's motion for summary judgment.

---

[1] Where appropriate, the Americans with Disabilities Act is abbreviated as the "ADA."

**Factual Background**

The facts are summarized principally from the complaint and from Walmart's statement of material facts ("SMF") offered in support of its motion for summary judgment (doc. no. 20-17). These facts are not in dispute unless noted.

In 2009, Walmart hired Ms. Lang to work as an order filler at its Raymond, New Hampshire, distribution center. SMF ¶ 1. In 2010, Ms. Lang requested and received a transfer to the position of unloader. Id. ¶ 2. As an unloader, Ms. Lang was responsible for unloading merchandise from tractor trailer trucks by hand and with the use of a forklift. Id. ¶¶ 3-4.

Certain trucks could be unloaded with the assistance of a forklift, but others, including trucks that were "reserved by data" ("RBD"), needed to be unloaded by hand. Id. ¶¶ 10-11. RBD trucks were stacked from floor to ceiling with merchandise, and thus could not be unloaded using a forklift. Id. Because much of the merchandise needed to be offloaded by hand, Walmart listed the ability to "move[], lift[], carr[y], and place[] merchandise and supplies weighing up to 60 pounds without assistance" as an essential function of an unloader. Id. ¶ 17.

In October 2010, Ms. Lang informed her supervisor, Brian Hug, that she was pregnant. Id. ¶ 20. Ms. Lang informed Mr. Hug that her doctor had suggested that she not lift items weighing more than 25 pounds, but Ms. Lang did not ask for an

accommodation and continued to perform her regular duties.  Id.
¶¶ 22-24.  Ms. Lang alleges that after she told Mr. Hug about
her pregnancy she was assigned a disproportionate number of RBD
trucks.  Compl. ¶ 20.  However, Walmart maintains that trucks
are assigned to unloaders at random.  SMF ¶ 18.

On November 7, 2010, Ms. Lang was unloading an RBD truck
when she pulled a muscle in her groin.  Id. ¶ 25.  She visited
the first aid station, then was driven home by a member of
Walmart's human resources department.  Id. ¶ 26.  Ms. Lang was
out of work for approximately two weeks.  Id. ¶ 27.  Upon her
return, Ms. Lang filed paperwork from her doctor indicating that
she could not lift more than 20 pounds, and requesting that
Walmart accommodate her pregnancy by either assigning her only
trailers that did not need to be offloaded by hand, or by
transferring her to a different position that would not require
heavy lifting.  Id. ¶¶ 27-29.

On December 10, 2010, Walmart sent a letter to Ms. Lang
denying her request for an accommodation on grounds that Ms.
Lang's pregnancy was a "temporary" condition.  Id. ¶ 31.  Ms.
Lang alleges, however, that she is aware of at least three other
Walmart employees who became pregnant and who were given
alternative working arrangements to avoid assignments that
involved heavy lifting.  See Pl's Objection to Def.'s Mot. for
Summ. J. 11 (doc. no. 23-1).  Shortly after Walmart denied her

request for an accommodation, Ms. Lang filed a complaint with the New Hampshire Commission for Human Rights ("Commission for Human Rights"), alleging that Walmart had discriminated against her on the basis of her pregnancy and had failed to provide her with a reasonable accommodation.  SMF ¶ 33.

Her request for an accommodation having been denied, Ms. Lang applied for and was granted a leave of absence under the Family and Medical Leave Act ("FMLA").  Id. ¶ 32.  In December 2010, Ms. Lang applied for an extension of her FMLA leave of absence.  Id. ¶ 34.  Even though Ms. Lang had exhausted her FMLA leave entitlement, Walmart granted this request and extended Ms. Lang's leave of absence through June 18, 2011.  Id.

Ms. Lang gave birth to her son in June 2011 and then took approximately six weeks of maternity leave.  Id. ¶ 35.  She returned to work in July 2011 and was assigned to work as an FID processor.  Id. ¶ 36.  In this capacity, Ms. Lang was required to use a forklift to transport merchandise and to scan and label boxes before placing them on a conveyor belt.  Id. ¶ 37.  In an affidavit that accompanied her objection to the motion for summary judgment, Ms. Lang stated that she felt "targeted" after returning from maternity leave.  See Aff. of Nicole R. Lang ("Lang Aff.") ¶ 15 (doc. no. 23-2).  As examples, Ms. Lang cites delays in approving her requests for breaks to use her breast

pump and states that several of her supervisors were "watching" her.  Id.

Ms. Lang injured her right arm while at work in November 2011.  SMF ¶ 38.  Walmart placed Ms. Lang on "temporary alternative duty" for 90 days, meaning that she continued to work, but performed light tasks such as dusting.  Id. ¶ 39. Because Ms. Lang continued to experience pain in her arm, Walmart gave her a second temporary alternative duty assignment, which consisted of sorting labels.  Id. ¶¶ 40-41.

On February 17, 2012, Ms. Lang requested a two-week leave of absence.  Id. ¶ 42.  At approximately the same time, Ms. Lang's husband, who also worked at the Walmart distribution center, filed a request to be transferred to a Walmart facility in Florida.  Id. ¶ 43.  Walmart granted Ms. Lang's request for leave, and her husband's transfer request, and the family moved to Florida.  Id. ¶¶ 44-45.

Pursuant to Walmart's leave of absence policy, Ms. Lang was informed that she would only be eligible for continued leave if she provided the requisite medical certifications.  Id. ¶¶ 46-47.  During the spring and summer of 2012, Ms. Lang failed to provide these certifications and explained to Walmart personnel that she could not find a doctor in Florida who would treat her and fill out the required paperwork.  Id. ¶¶ 49-52.  In her affidavit, Ms. Lang states that, in response, a Walmart human

resources employee "laughed at [her]" and stated that Ms. Lang had "put [herself] in a bad position."  Lang Aff. ¶ 24.

Walmart sent Ms. Lang a letter on August 16, 2012, informing her that Walmart would be forced to process her resignation unless she submitted the certification showing her continued need for medical leave.  SMF ¶ 53.  When Ms. Lang failed to do so, Walmart proceeded with the resignation.  Id. ¶ 55.  This lawsuit followed.

## Legal Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (citations omitted); see also Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the court must "view[] the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Winslow v. Aroostook Cnty., 736 F.3d 23, 29 (1st Cir. 2013) (citations omitted) (internal quotation marks omitted).

"The object of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (citations omitted) (internal quotation marks

omitted).  "[T]he court's task is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

## Discussion

Ms. Lang has brought three claims.  Count I alleges that Walmart discriminated against her in violation of Title I; Count II alleges that Walmart discriminated against her in violation of the NHLAD; and Count III alleges that she was wrongfully discharged in violation of New Hampshire common law.  The court will consider each claim in turn.

## I.   Count I – Title I

In Count I, Ms. Lang alleges that Walmart discriminated against her on the basis of her disability by failing to provide her with a reasonable accommodation in violation of Title I.  Ms. Lang plainly identifies her disability as being her pregnancy.  See Compl. ¶¶ 57, 62 ("At all relevant times, Wal-Mart knew about the Plaintiff's disability which arose from her pregnancy status . . . . [t]he Defendant's refusal to make reasonable accommodations for Plaintiff's known disability constitutes discrimination against Plaintiff due to her disability in violation of [Title I].").

7

Under Title I, "an employer who knows of a disability yet fails to make reasonable accommodations violates the [ADA]." Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003) (quoting Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999)).  In order to avoid summary judgment, a plaintiff in a reasonable accommodation suit must "produce enough evidence for a reasonable jury to find that (1) [she] is disabled within the meaning of the ADA, (2) [she] was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [her] disability, did not reasonably accommodate it." Rocafort, 334 F.3d at 119 (citing Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)).

Walmart is entitled to summary judgment on Ms. Lang's Title I claim because she is unable to satisfy any of these three elements.  As an initial matter, Ms. Lang was not disabled within the meaning of the ADA, because courts in this jurisdiction do not recognize pregnancy, by itself, as a disability.  See De Jesus v. LTT Card Servs., 474 F.3d 16, 18 n.2 (1st Cir. 2007) (citing 29 C.F.R. § 1630.2(h) ("The district court did not decide whether discrimination on the basis of pregnancy is cognizable under the ADA, and neither party has argued the issue on appeal, so we do not reach it.  We note, however, that the [Equal Employment Opportunity Commission]'s

interpretative guidance to the ADA states that 'conditions, such as pregnancy, that are not the result of a physiological disorder are . . . not impairments' under the ADA.")); Navarro v. Pfizer Corp., 261 F.3d 90, 97 (1st Cir. 2001) ("While pregnancy itself may not be an impairment, the decided [] cases tend to classify complications resulting from pregnancy as impairments."); Annobil v. Worcester Skilled Care Ctr., Inc., No. 11-40131-TSH, 2014 U.S. Dist. LEXIS 126643, at *35-36 (D. Mass. Sept. 10, 2014) ("Being pregnant, in and of itself, is not a handicap.  However, complications related to pregnancy can constitute a handicap."); Tsetseranos v. Tech Prototype, 893 F. Supp. 109, 119 (D.N.H. 1995) ("[P]regnancy and related medical conditions are not 'disabilities' as that term is defined by the ADA."); see also Gudenkauf v. Stauffer Communs., Inc., 922 F. Supp. 465, 473 (D. Kan. 1996) ("Pregnancy is a physiological condition, but it is not a disorder.").

In opposing summary judgment, Ms. Lang acknowledges that pregnancy, alone, does not constitute a disability under the ADA.  See Pl's Objection to Def.'s Mot. for Summ. J. 13 (doc. no. 23-1) ("While pregnancy, in and of itself, is not a disability . . . .").  However, Ms. Lang attempts to circumvent this hurdle by arguing that the lifting restrictions suggested by her doctor constitute a "pregnancy-related impairment."

"All of the physiological conditions and changes related to a pregnancy [] are not impairments unless they exceed normal ranges or are attributable to some disorder." Gudenkauf, 922 F. Supp. at 473. Thus, to be actionable, a pregnancy-related impairment must be "unusual or abnormal." Id. at 474; see also Tsetseranos, 893 F. Supp. at 119 (conditions related to pregnancy must present "unusual circumstances" to constitute a disability under the ADA). Ms. Lang has not presented evidence that the lifting restrictions suggested by her doctor were the result of a disorder or an unusual or abnormal circumstance, rather than a routine suggestion to avoid strenuous physical labor during pregnancy. Thus, Ms. Lang cannot establish that she was disabled within the meaning of the ADA.

Nor can Ms. Lang satisfy the second element of a Title I reasonable accommodation claim because she has not established that she was able to perform the essential functions of her job with or without reasonable accommodation. Id. On this issue, Ms. Lang "bears the burden of proving that a proposed accommodation would enable her to perform the essential functions of her job." Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 81 (1st Cir. 2010) (citations omitted) (internal quotation marks omitted). It is undisputed that the ability to move, lift, carry, and place merchandise and supplies weighing up to 60 pounds was an essential function of Ms. Lang's position

as an unloader.  It is further undisputed that Ms. Lang
submitted paperwork from her doctor indicating that she should
not lift items weighing more than 20 pounds.

Ms. Lang contends that Walmart should have accommodated her
pregnancy either by assigning her only trailers that did not
need to be offloaded by hand, or by transferring her to a
different position that would not require heavy lifting.  Ms.
Lang has not demonstrated, however, that either of these
proposed accommodations would have enabled her to perform her
essential job functions.  Indeed, both proposed accommodations
sought to modify Ms. Lang's job description to avoid the
essential functions of moving, lifting, carrying, and placing
heavy merchandise and equipment, but would not have allowed her
to complete these functions.  See 29 C.F.R. § 1630.2(o)(1)(ii)
("The term reasonable accommodation means: [m]odifications or
adjustments to the work environment, or to the manner or
circumstances under which the position held . . . is customarily
performed, that enable an individual with a disability . . . to
perform the essential functions of that position.") (emphasis
added).  Thus, Ms. Lang is unable to establish that she was able
to perform her essential job functions with or without
reasonable accommodation.

Finally, Ms. Lang cannot satisfy the third element of her
Title I claim because she is unable to show that Walmart

unlawfully failed to provide her with a reasonable
accommodation.  Rocafort, 334 F.3d at 119.  The ADA obliges
employers to provide a reasonable accommodation to a disabled
employee.  See Enica v. Principi, 544 F.3d 328, 338 (1st Cir.
2008); see also 42 U.S.C. § 12112(b)(5)(A).  Nevertheless, it is
the plaintiff's burden to demonstrate the reasonableness of a
proposed accommodation.  In other words, the plaintiff must show
that the proposed accommodation is "feasible for the employer
under the circumstances."  Reed v. LePage Bakeries, 244 F.3d
254, 259 (1st Cir. 2001).  Ms. Lang cannot establish that either
of her proposed accommodations was feasible.

    Ms. Lang's first suggested accommodation would have excused
her from unloading any truck that needed to be unloaded by hand.
The First Circuit has held, however, that the ADA "does not
require an employer to accommodate a disability by foregoing an
essential function of the position or by reallocating essential
functions to make other workers' jobs more onerous."
Richardson, 594 F.3d at 81 (citations omitted) (internal
quotation marks omitted); see also Mulloy v. Acushnet Co., 460
F.3d 141, 153 (1st Cir. 2006) (reasoning that a proposed
accommodation that "redefin[ed]" the plaintiff's job description
was "per se unreasonable").  Thus, requiring Walmart to excuse
Ms. Lang from unloading trucks by hand would not have been a
reasonable or feasible accommodation.

Ms. Lang also contends that Walmart could have accommodated her pregnancy by allowing her to transfer to another position that did not require manual lifting.  Reasonable accommodation may include reassignment to a vacant position, but the plaintiff "bears the burden of proof in showing that such a vacant position exists," and an employer "is not required by the ADA to create a new job for an employee."  Phelps v. Optima Health, Inc., 251 F.3d 21, 27 (1st Cir. 2001) (citations omitted).

Ms. Lang has not proffered evidence establishing (or even suggesting) that a suitable position was vacant at the time that she made a request for a reasonable accommodation.  Rather, she contends that a genuine issue of material fact remains regarding whether Walmart accommodated other employees with lifting restrictions.  Specifically, in her affidavit, Ms. Lang names three women she contends became pregnant and were offered transfers to positions that did not require heavy lifting.

Courts recognize ADA claims based on the disparate treatment of the plaintiff vis-à-vis other employees.  See, e.g., Perkins v. Brigham & Women's Hosp., 78 F.3d 747 (1st Cir. 1996).  Nevertheless, these claims "must rest on proof that the proposed analogue is similarly situated in material respects." Id. at 751.  In her affidavit, Ms. Lang names three women whom she recalls were reassigned to less labor-intensive positions when they became pregnant.  However, Ms. Lang does not identify

13

the specific circumstances surrounding the transfers, the essential functions of the positions in question, nor whether a similar position was available at the time that Ms. Lang became pregnant.  Therefore, Ms. Lang has not carried her burden to demonstrate that allowing her to transfer to a different position would have been a reasonable accommodation.

For all of these reasons, Walmart is entitled to summary judgment on Count I.

II.   Count II - NHLAD

In Count II, Ms. Lang alleges that Walmart discriminated against her in violation of the NHLAD.  The complaint appears to assert two theories of liability.  First, Ms. Lang alleges that Walmart discriminated against her by failing to give her a reasonable accommodation and by terminating her employment. Second, Ms. Lang alleges that Walmart retaliated against her for requesting a reasonable accommodation and for filing a complaint with the Commission for Human Rights.  Like her Title I claim, Ms. Lang plainly alleges that her disability for purposes of the NHLAD was her pregnancy.  See Compl. ¶ 68 ("While employed by the Defendant, the Plaintiff has a physical impairment under the [NHLAD] which substantially limits a major life activity: she had lifting restrictions related to her pregnancy.").

Per the guidance of the New Hampshire Supreme Court, this court relies on cases construing Title VII of the ADA to assess

14

Ms. Lang's NHLAD claim.  Hubbard v. Tyco Integrated Cable Sys., Inc., 985 F. Supp. 2d 207, 218 (D.N.H. 2013); see also Madeja v. MPB Corp., 821 A.2d 1034, 1042 (N.H. 2003).  Where, as here, the plaintiff is unable to offer direct proof of the employer's discriminatory animus, courts rely on the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Hubbard, 985 F. Supp. 2d at 221. The McDonnell Douglas framework is applied in a similar fashion to NHLAD claims for unlawful discrimination and retaliation. For both, a plaintiff must first establish a prima facie case. Hubbard, 985 F. Supp. 2d at 221.  Meeting the initial prima facie requirement is "not especially burdensome," but the prima facie case must be established by a preponderance of the evidence.  Id. (quoting Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 12 (1st Cir. 2011)).  If the plaintiff is successful in establishing a prima facie case, the burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its challenged actions."  Hubbard, 985 F. Supp. 2d at 232 (quoting Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 10 (1st Cir. 1998)).  Finally, if the defendant satisfies this burden, then in step three, the ultimate burden falls on the plaintiff to "show that the proffered legitimate reason is in fact a pretext . . . ."  Hubbard, 985 F. Supp. 2d

at 232 (quoting Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)).

Walmart is entitled to summary judgment on Ms. Lang's NHLAD claim because she cannot establish a prima facie case of either unlawful discrimination or retaliation.  As the standards for these claims differ, the court will assess each separately.

A.   Unlawful Discrimination in Violation of the NHLAD

Ms. Lang's NHLAD claim is based in part on her allegations that Walmart discriminated against her by not providing her with a reasonable accommodation when she became pregnant, and by later terminating her employment.  To establish a prima facie case of discrimination on the basis of a disability under the NHLAD, "'the plaintiff must show that [she] (1) is disabled within the meaning of the ADA; (2) is qualified to perform the essential functions of [her] job with or without reasonable accommodation; and (3) was discharged or otherwise adversely affected in whole or in part because of [her] disability.'" Isaacs v. Dartmouth-Hitchcock Med. Ctr., No. 12-cv-040-LM, 2014 U.S. Dist. LEXIS 54183, at *18 (D.N.H. Apr. 18, 2014) (quoting Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 86-87 (1st Cir. 2012)).

Ms. Lang is unable to satisfy the first two elements of a prima facie case of discrimination.  For the reasons discussed above, her pregnancy did not constitute a disability under the

16

ADA, even when viewed in connection with her lifting restriction. What is more, Ms. Lang is unable to demonstrate that she was able to perform the essential functions of moving, lifting, carrying, and placing merchandise weighing up to 60 pounds with or without a reasonable accommodation. Thus, Walmart is entitled to summary judgment on Count II insofar as it alleges unlawful discrimination in violation of the NHLAD.

### B.   Unlawful Retaliation in Violation of the NHLAD

Ms. Lang's NHLAD claim includes allegations that Walmart retaliated against her for requesting a reasonable accommodation and for filing a complaint with the Commission for Human Rights. Based on the complaint, it appears that Ms. Lang alleges that Walmart retaliated against her by assigning her a disproportionate number of RBD trucks to unload, and by later terminating her employment. Ms. Lang also alleges in her affidavit that she felt "targeted" when she returned from maternity leave when there were delays in approving her requests to use her breast pump, and when she felt that certain supervisors were "watching" her.

To establish a claim for retaliation under the ADA, "a plaintiff must establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Calero-Cerezo v. U.S.

Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004).  Walmart does

not dispute that Ms. Lang engaged in protected conduct by

requesting a reasonable accommodation and by filing a complaint

with the Commission for Human Rights, nor does Walmart dispute

that Ms. Lang ultimately experienced an adverse employment

action when her employment was terminated.  Rather, the parties

dispute whether Ms. Lang has established a causal connection

between the protected conduct and her termination.

     "In order to survive a motion for summary judgment, the

plaintiff must point to evidence in the record that would permit

a rational factfinder to conclude that the employment action was

retaliatory."  King v. Town of Hanover, 116 F.3d 965, 968 (1st

Cir. 1997).  "This evidence must 'have substance in the sense

that it limns differing versions of the truth which a factfinder

must resolve at an ensuing trial.'"  Id. (citing Mack v. Great

Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)).

     The court finds that Ms. Lang has not established the

requisite causal connection because the undisputed facts show

both that her protected conduct significantly predated her

termination and that Walmart went to great lengths in an effort

to help her keep her job.  Ms. Lang made her request for a

reasonable accommodation in late November 2010, then filed her

complaint with the Commission for Human Rights several weeks

later in December.  Her termination took place in August 2012,

18

some twenty-one months later.  This extensive temporal gap significantly undermines Ms. Lang's argument regarding a causal connection.  See, e.g., Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010) ("Without some corroborating evidence suggestive of causation . . . a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action.").

What is more, the undisputed record establishes that during the period of time between Ms. Lang's protected conduct and her termination, Walmart practically bent over backwards to ensure that Ms. Lang was able to keep her job.  For example, after she had requested a reasonable accommodation and filed her complaint with the Commission for Human Rights, Walmart granted Ms. Lang extended FMLA leave beyond her statutory entitlement.  Then, when Ms. Lang returned from maternity leave, Walmart arranged for her to fill a vacant FID processor position, which enabled her to avoid strenuous lifting.  Later, when Ms. Lang injured her arm on the job, Walmart gave her two temporary alternative duty assignments in order to keep her on the active payroll.  Finally, Walmart extended Ms. Lang's leave of absence even after she and her family had moved to Florida.  Walmart only processed Ms. Lang's termination after she repeatedly failed to submit the paperwork necessary to extend her leave of absence, and even then Walmart processed the termination as a voluntary

resignation, enabling Ms. Lang to apply for employment with Walmart in the future if she chooses to do so.[2]

Viewing the evidence in the light most hospitable to Ms. Lang, as the court must, Winslow, 736 F.3d at 29, Ms. Lang is unable to establish a causal connection between her protected conduct and the adverse employment action. Calero-Cerezo, 355 F.3d at 25. Even crediting Ms. Lang's allegations about increased RBD assignments and "targeting," her evidence on causation falls short. Thus, even though the burden is not heavy, Ms. Lang is not able to establish a prima facie case of retaliation, Walmart is therefore entitled to summary judgment on Count II insofar as it alleges unlawful retaliation.

Even were Ms. Lang to establish a prima facie case of retaliation, her claim would nevertheless be properly resolved in Walmart's favor on summary judgment because she cannot satisfy the third step of the McDonnell Douglas framework.

---

[2] Ms. Lang alleges that a Walmart human resources employee "laughed at [her]" and stated that Ms. Lang had "put [herself] in a bad position" when Ms. Lang was unable to find a doctor in Florida to fill out her leave of absence paperwork. Separately, she alleges that a human resources employee told her that "if I accommodate you, I have to accommodate everyone." Ms. Lang points to these episodes as evidence of Walmart's retaliatory motive. The court disagrees. At worst, the observation that Ms. Lang had put herself in a "bad position" by moving out of state when her job and health were in flux was insensitive, but it is not evidence of unlawful retaliation. What is more, the comment regarding Ms. Lang's entitlement to an accommodation was nothing more than an accurate (if not blunt) statement of fact.

Walmart has proffered a legitimate reason for Ms. Lang's termination: Ms. Lang failed (after repeated requests) to provide the paperwork necessary to extend her leave of absence. Ms. Lang has not offered any evidence suggesting that this proffered reason is a pretext for unlawful discrimination or retaliation.  See Hubbard, 985 F. Supp. 2d at 232.

## III. Count III - Wrongful Discharge

Ms. Lang's final claim is for wrongful discharge.  She alleges that her termination was motivated by bad faith, malice, or retaliation, and that Walmart violated public policy by refusing to accommodate her pregnancy.[3]  To prevail on a claim for wrongful discharge, a plaintiff must establish that "(1) [her] termination was motivated by bad faith, retaliation or malice; (2) and that [she] was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn."  MacKenzie v. Linehan, 969 A.2d 385, 388 (N.H. 2009) (citing Lacasse v. Spaulding Youth Ctr., 910 A.2d 1262, 1265 (N.H. 2006)).  "While

---

[3] Walmart contends that Ms. Lang's wrongful discharge claim is precluded because it is premised on the same set of facts as her NHLAD claim.  See Wenners v. Great State Beverages, Inc., 663 A.2d 623, 625 (N.H. 1995) ("[A] plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action . . . .").  Because Ms. Lang's wrongful discharge claim is independently without merit, the court declines to separately address the issue of preclusion.

bad faith or malice comes in various forms, it is not bad faith to terminate an employee for legitimate business reasons." Antonis v. Elecs. For Imaging, Inc., No. 07-cv-163-JL, 2008 U.S. Dist. LEXIS 106093, at *8 (D.N.H. Nov. 25, 2008).

Walmart is entitled to summary judgment on Ms. Lang's wrongful discharge claim.  For the reasons described above, Ms. Lang has not offered evidence showing that her termination was undertaken in bad faith, or was the result of retaliation.  On the contrary, the record soundly establishes that Walmart took pains to afford Ms. Lang numerous opportunities to extend her leave of absence and to save her job.  When Ms. Lang did not submit the necessary paperwork, only then did Walmart act to process her resignation.[4]

### Conclusion

There can be no doubt that pregnancy imposes challenges for women in the workplace.  This is particularly true for women,

---

[4] Ms. Lang also suggests in her complaint that Walmart's wrongful discharge breached the implied covenant of good faith and fair dealing.  New Hampshire courts recognize an implied covenant of good faith and fair dealing in at will employment arrangements, and "termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation" may be actionable.  See Monge v. Beebe Rubber Co., 316 A.2d 549, 551 (N.H. 1974).  Ms. Lang's good faith and fair dealing claim is wholly undeveloped, aside from a brief mention in her complaint.  What is more, for the same reasons as those described above, the court finds that Walmart's termination of Ms. Lang's employment was not motivated by bad faith, malice, or retaliation.  Thus, Ms. Lang is unable to recover under a good faith and fair dealing theory.

like Ms. Lang, who occupy positions requiring strenuous manual labor.  In this case, however, Ms. Lang has not demonstrated the existence of a triable issue of material fact, and thus Walmart is entitled to summary judgment.  Walmart's motion for summary judgment (doc. no. 20) is GRANTED.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 3, 2015

cc:   Darlene M. Daniele, Esq.
      Vanessa K. Hackett, Esq.
      Christopher B. Kaczmarek, Esq.